# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

KENDRICK L. REESE, :

    Plaintiff, :

vs. :    CA 20-0256-MU

ANDREW M. SAUL, :
Commissioner of Social Security,
    :
    Defendant.

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Kendrick L. Reese brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 18 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] the Court

---

[1] The parties waived oral argument. (*See* Docs. 16 & 19).

concludes that the Commissioner's decision denying benefits should be reversed and remanded for further consideration not inconsistent with this decision.[2]

## I. Procedural Background

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on March 23, 2017,[3] alleging disability beginning on March 28, 2016. (*Compare* Doc. 12, PageID. 64 *with id.,* PageID. 235-42). Reese's claims were initially denied on July 13, 2017 (*id.,* PageID. 145-48 & 153-57) and, following Plaintiff's July 20, 2017 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 158-59), a hearing was conducted before an ALJ on November 26, 2018 (*id.,* PageID. 87-118). On April 17, 2019, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to social security benefits. (*Id.,* PageID. 64-79). The ALJ determined at the fifth step of the five-step sequential evaluation process that Reese retains the residual functional capacity to perform sedentary work and, more specifically, those sedentary jobs identified by the vocational expert ("VE") at the administrative hearing conducted on November 26, 2018. (*Compare id.,* PageID. 77-78 *with id.,* PageID. 116). On May 23, 2019, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 229-

---

[2]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[3]    On January 18, 2017, the Social Security Administration published revisions to its regulations which apply to claims filed on or after March 27, 2017. *See, e.g., Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020). Given the protective filing date of Reese's applications of March 23, 2017, the revisions to the Commissioner's regulations **are not** applicable in this case.

31); the Appeals Council denied Reese's request for review on March 27, 2020 (*id.,* PageID. 55-57). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to back and neck disorders, sacroiliitis, and asthma. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.     The claimant has the following severe impairments: back and neck disorder; sacroiliitis, and asthma  (20 CFR 404.1520(c) and 416.920(c)).**
>
> .   .   .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .   .   .
>
> **5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant can frequently handle and finger and occasionally reach overhead bilaterally. The claimant can have occasional exposure to unprotected heights, moving mechanical parts, dusts, odors, fumes, and other pulmonary irritants.**
>
> .   .   .
>
> **6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**
>
> .   .   .
>
> **7.     The claimant was born on March 10, 1971 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

.   .   .

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Doc. 12, PageID. 67, 68, 68-69, 77 & 78 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[4] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

4

claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Reese asserts but one reason why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): the ALJ committed reversible error in violation of 20 C.F.R. §§ 404.1545 and 416.945, as well as Social Security Ruling 96-8p, in that his RFC determination is not supported by substantial evidence because the ALJ disregarded the opinions of multiple treating and examining physicians and relied instead on his own medical determination and the opinion of a non-examining, reviewing physician.

**A.    ALJ's RFC Determination and the Opinion Evidence of Record**.

Plaintiff attacks the ALJ's RFC determination, and ultimate decision of non-disability, by principally arguing that the ALJ improperly considered the opinion evidence of record.

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v.*

---

[5]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

6

*Commissioner, Social Sec. Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Sec.,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . ."). Because "[a]n RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments[,]" *Packer, supra,* 542 Fed.Appx. at 891, consideration of a claimant's testimony and credibility is certainly an aspect of any such determination**,** *see id.* at 892 (in finding that Plaintiff had failed to establish that her RFC assessment was not supported by substantial evidence, the Eleventh Circuit considered, among other

7

matters, the ALJ's consideration of Packer's testimony, specifically the credibility determination).

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6] However, in order to find the ALJ's RFC assessment supported by

---

6     It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. (Continued)

substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

     In this case, the Court finds that the ALJ failed to properly link his RFC assessment—that is, sedentary work with limitations—to specific evidence in the record bearing upon Reese's ability to perform the physical, mental, sensory and other requirements of work because the ALJ failed to identify in sufficient detail how the medical evidence of record supported the components of his RFC determination, most specifically the finding that Plaintiff is capable of performing the prolonged sitting required of sedentary work (*see* Doc. 12, PageID. 68-69), *compare Lapica v. Commissioner of Social Sec.,* 501 Fed.Appx. 895, 899 (11th Cir. Dec. 14, 2012)

---

However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

9

(exertional requirements of sedentary work generally require the ability to sit for approximately 6 hours in an 8-hour workday) and *Reyes v. Heckler,* 601 F.Supp. 34, 37 (S.D. Fla. 1984) (citing 20 C.F.R. § 404.1567(a) and SSR 83-10, and recognizing that sedentary jobs require substantial sitting, that is, 6 hours of sitting out of an 8-hour workday) *with Coley v. Commissioner of Social Sec.,* 771 Fed.Appx. 913, 917 (11th Cir. May 3, 2019) (recognizing that sedentary work, as defined in 20 C.F.R. § 404.1567(a), may require a certain amount of walking and standing but consist of jobs that principally involve sitting).

There can be little question but that the ALJ summarized the record evidence in this case (*see* Doc. 12, PageID. 69-75) and thereafter followed with the broad statement that "[i]n consideration of the evidence as a whole, the limitation to a reduced range of sedentary work fully accommodates the claimant's impairments." (*Id.,* PageID. 76). However, just as the Commissioner on appeal cannot manufacture linkage by using the record as a whole, *see Dunham, supra,* at *3, so too, in this Court's opinion, an ALJ cannot do as the ALJ in this case did and with one broad brush of the pen attempt to establish linkage by using the evidence as a whole. *See id.* There are simply no statements of clarity, in particular, regarding how the evidence of record (for a Plaintiff who has had both cervical and lumbar surgeries) establishes that Plaintiff can perform six (6) hours of sitting in an 8-hour workday. (*See* Doc. 12, PageID. 69-75). And that such statements were vital to establish linkage is clear because of the ALJ's improper analysis of the opinion evidence of record, as well as his failure to directly address certain components of Reese's administrative hearing testimony.

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Sec. Admin.,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Sec.,* 686 Fed.Appx. 731, 732 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Sec.,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight); *compare id. with Nyberg v. Commissioner of Social Sec.,* 179 Fed.Appx. 589, 590-91 (11th Cir. May 2, 2006) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'")).

"When weighing each medical opinion,[7] the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the

---

[7] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's]
(Continued)

11

medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Commissioner of Social Sec.,* 716 Fed.Appx. 917, 919 (11th Cir. Nov. 27, 2017), citing 20 C.F.R. § 416.927(c) (footnote added); *see also Jacks v. Commissioner, Social Sec. Admin.,* 688 Fed.Appx. 814, 819 (11th Cir. May 23, 2017) ("The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including whether the doctor has examined the claimant, the medical evidence and explanation supporting the doctor's opinion, and how consistent the doctor's 'opinion in with the record as a whole.'" (citations omitted)). "These factors apply to both examining and non-examining physicians." *Huntley v. Social Sec. Admin., Commissioner,* 683 Fed.Appx. 830, 832 (11th Cir. Mar. 29, 2017) (citations omitted).

> When considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." Moreover, "because nonexamining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion."

*Id.* at 832-33 (internal citations omitted; footnote added). A panel of the Eleventh Circuit has determined that an "ALJ is not required to explicitly address each" of the factors set forth in § 404.1527(c), *see Lawton v. Commissioner of Social Sec.,* 431 Fed.Appx. 830,

---

symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." *See, e.g.,* 20 C.F.R. § 416.927(a)(1).

833 (11th Cir. June 22, 2011), and that the core inquiry is whether "good cause" exists for rejecting particular medical opinions, *see id.*

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). It is clear that this same "good cause" standard would apply equally to opinions of examining physicians (who are not treating physicians) and non-examining, reviewing physicians.

The ALJ analyzed the "physical" opinion evidence from physicians in the following manner:

> The undersigned gives partial weight to the opinion of Howard C. Harper, Jr., M.D. as it is generally consistent with the medical evidence of record and normal examination findings but the undersigned lowered exertional limits to accommodate subjective complaints and CE lifting limits opinion. Dr. Harper found that the claimant can perform a range of light work.
>
> . . .
>
> The undersigned gives little weight to the opinions of Eric Johnson, M.D., as he does not give a function by function breakdown and the 2017 opinion does not support a finding that the claimant could not do any work. Dr. Johnson just notes that the claimant would have some restrictions. Those opinions are not consistent with the normal examination findings noted on the dates that the forms were completed.
>
> . . .
>
> The undersigned gives little weight to the opinion of Lloyd Manchikes, M.D., as he notes on multiple visits that: "He can't raise his arms above his head. He is disabled from this." Not only is this opinion reserved to the commissioner, it is also not consistent with the normal exams in the file.

13

> That factor alone would not eliminate all work either. This opinion is inconsistent with the physical exams in the file from other providers.
>
> The undersigned gives little weight to the opinion of Andre Fontana, M.D., as his opinion on manipulatives, postural activities, and environmentals are not consistent with the medical evidence of record or his notations of normal strength, gait, good range of motion in his fingers, wrists, elbows, ankles, knees, hips, and shoulders, and normal grip strength. This opinion is not consistent with other opinion evidence.

(Doc. 12, PageID. 76 & 76-77 (internal citations omitted)). So, as far as doctor's opinions related to Plaintiff's physical limitations are concerned, the ALJ accorded partial weight to the opinion of the non-examining, reviewing physician rendered on June 23, 2017 (*see* Doc. 12, PageID. 141-42) and little weight to the doctors who treated or at least examined him once, as did Dr. Fontana (*see id.,* PageID. 76 & 76-77). For purposes of this decision, the Court focuses solely upon the ALJ's analysis of the opinion evidence offered by Dr. Harper,[8] the reviewing physician, and Dr. Fontana, an orthopedist who examined Reese on a consultative basis, at the behest of the Social Security Administration, in January of 2019 (*see id.,* PageID. 738-48).

The ALJ stated he only accorded partial weight to Dr. Harper's opinion, and this is true to the extent that he credited, for instance, Dr. Fontana's weight carrying/lifting limitations over those of the non-examiner (*compare id.,* PageID. 76 ("the undersigned lowered exertional limits to accommodate subjective complaints and CE lifting limits opinion") *with* PageID. 141 (Dr. Harper's findings that Plaintiff can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds) and PageID. 738 (Dr. Fontana's findings that Plaintiff can occasionally lift and carry up to 10 pounds));

---

[8] Interestingly, Dr. Harper appears to be not an orthopedist or neurologist but, instead, a pediatrician. *See* www.vitals.com>FindaDoctor>AL>Mobile (last visited, March 9, 2021).

14

however, it appears that the ALJ backhandedly gave significant weight to Dr. Harper's opinion that Reese can perform the sitting requirements of sedentary work (*compare id.,* PageID. 76 *with* PageID. 141 (finding claimant can sit about 6 hours in an 8-hour workday)). This backhanded or implicit finding by the ALJ regarding Dr. Harper's opinion, however, is problematic both because the non-examiner's opinion is based upon only a portion of the entire record (specifically, the evidence in existence as of June 23, 2017, but none of the significant evidence of record generated after that mid-2017 date), *see Brightmon v. Social Sec. Admin.,* 743 Fed.Appx. 347, 352-53 (11th Cir. Aug. 2, 2018) (finding it problematic for the ALJ to rely on the RFC assessment of the state-agency medical consultant because the assessment was not based on the record as a whole and the medical evidence regarding the claimant's physical impairments was much more developed after that assessment was rendered), and also because the ALJ later in his opinion appears to have accepted Dr. Fontana's sitting/standing/walking limitations as true (*see* Doc. 12, PageID. 76-77). This Court has used "appears" a lot because the ALJ addressed the opinion evidence in a confusing manner and failed to directly address pertinent elements of the medical opinion of Dr. Fontana (as well, in truth, as the medical opinion of Dr. Harper). Indeed, in giving little weight to Dr. Fontana's opinion the ALJ solely focused on the examining physician's opinions directed to manipulative, postural, and environmental limitations (*see id.,* PageID. 76-77) but did not specifically address the opinions directed to Plaintiff's abilities to sit, stand and walk (*see id.*; *compare id. with id.,* PageID. 739 (finding Plaintiff can sit one hour at a time without interruption and a total of 5 hours in an 8-hour workday with breaks; he can stand for 2 hours at a time without interruption and a total of 6 hours in

an 8-hour workday with breaks; and he can walk 2 hours at a time without interruption and a total of 6 hours in an 8-hour workday with breaks)). However, because the ALJ earlier in his opinion specifically accepted Dr. Fontana's "lifting limits opinion" (Doc. 12, PageID. 76) and specifically rejected only those opinions regarding manipulative, postural, and environmental limitations (*compare id.,* PageID. 76-77 *with id.,* PageID. 740-742 (Dr. Fontana's opinions regarding manipulatives, postural activities and environmental limitations)), he either accepted the consultative examiner's sit/stand/walk (at one time and total in an 8-hour workday, with breaks) opinions as true, *see MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) ("Where the Secretary has ignored or failed properly to refute a treating physician's testimony we hold, as a matter of law, that he has accepted it as true."),[9] or, at the very least, his failure to specifically discuss these pertinent elements of the examining physician's medical opinion requires a remand so that the ALJ can clearly articulate the reasons for rejecting

---

[9]   Any suggestion by the Defendant that the ALJ's last sentence of his Dr. Fontana paragraph provides reasoning for the rejection of Dr. Fontana's sit/stand/walk limitations (*see* Doc. 12, PageID. 77 ("This opinion [offered by Dr. Fontana] is not consistent with other opinion evidence.")), is unavailing because the only other arguably "contrary" opinion evidence would be that of Dr. Harper and Dr. Harper's opinion (rendered on June 23, 2017) cannot serve as a basis for such a conclusory rejection of Dr. Fontana's opinion since Dr. Harper's opinion is based on a fraction of the evidence Dr. Fontana had before him and considered/reviewed in January of 2019 (*see* Doc. 12, PageID. 744 ("**The medical evidence of record provided by DDS was reviewed and those findings were considered in the overall assessment of the patient.**"); *see also id.,* PageID. 745 ("Review of the patient's medical records indicate EMG nerve conduction studies indicating what appears to be ***acute denervation in the left lower extremity.*** Patient has been evaluated by neurosurgery who felt there was not anything else that could be done, recommend referral to pain management." (emphasis supplied)) and obviously did not consider Dr. Fontana's findings (*compare id.,* PageID. 747 (Fontana's findings) *with id.,* PageID. 138 (the list of evidence considered by Dr. Harper ended with evidence from May 23, 2017)) or other relevant evidence of record after May 23, 2017 (*see, e.g.,* Doc. 12, PageID. 682 (Providence Hospital discharge instructions given to Reese on August 5, 2018 advised against "sitting or standing in one position for very long[]" and instructed him to "[t]ake breaks to get up, stretch, and walk around at least one time every hour.")).

those elements of Dr. Fontana's opinion, *Winschel v. Commissioner of Social Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011). This course of action is required in this case because, at the end of the day, Dr. Fontana's sit/stand/walk opinions establish that Reese cannot perform the substantial sitting (6 hours out of an 8-hour workday) required of sedentary work, *see, e.g., Lupica, supra,* 501 Fed.Appx. at 899, and, as well, that Reese would need a job allowing a sit/stand opinion (as described by Dr. Fontana) since he can only sit for one hour at a time without interruption and for only 5 hours in an 8-hour workday with breaks, [10] *compare, e.g., Divirgilio v. Commissioner of Social Sec.,* 2020 WL 4593323, *1 (M.D. Fla. Aug. 11, 2020) (discussing an ALJ's finding that the claimant could perform less than the full range of sedentary work and that he would need a job with a sit/stand option) *with Watkins v. Commissioner of Social Sec.,* 457 Fed.Appx. 868, 871 (11th Cir. Feb. 9, 2012) (finding that "[w]ithout a clear explanation of the ALJ's treatment of Dr. Feussner's sit/stand limitation, we cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence.").[11]

---

[10] In other words, there is no harmless error argument to be made. Moreover, the undersigned would simply point out that even the ALJ recognized and accommodated Reese's need to change positions during the evidentiary hearing (*see* Doc. 12, PageID. 104-05 (Reese's testimony that he can only sit 20-30 minutes before his legs hurt and start to go numb but that he did not want to stand during the hearing because it was being recorded; however, he stood when the ALJ welcomed him to stand)), thereby begging why the ALJ did not incorporate Dr. Fontana's sit/stand/walk limitations in a hypothetical posed to the VE.

[11] The Court would also parenthetically note that it harbors concerns regarding the ALJ's failure to expressly tackle and address Reese's evidentiary hearing testimony that his pain medication (Norco 10) makes him drowsy and sleepy (*see* Doc. 12, PageID. 113). Given that one side effect of Norco 10 is drowsiness, *see* www.rxlist.com>norco-side-effects-drug-center (last visited, March 10, 2021), the ALJ was required to make a finding regarding whether that side effect rendered Reese disabled. *See Carter v. Commissioner of Social Sec.,* 411 Fed.Appx. 295, 297 (11th Cir. Feb. 1, 2011) ("[T]he ALJ has a duty to make a finding regarding whether the side effects of medications taken by a Social Security claimant render that claimant disabled."). On remand, the ALJ can properly address all aspects of Plaintiff's administrative hearing testimony.

Based on the foregoing, the undersigned finds that the ALJ's RFC determination is not supported by substantial evidence and, therefore, the Court lacks the basis to find that Reese can perform those sedentary jobs identified by the vocational expert during the administrative hearing.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 26th day of March, 2021.

                                              s/P. Bradley Murray
                                              **UNITED STATES MAGISTRATE JUDGE**